

15 CV 00647

MICHAEL FAILLACE & ASSOCIATES, P.C.
Michael Faillace [MF-8436]
60 East 42nd Street, Suite 2020
New York, New York 10165
(212) 317-1200
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
MANUEL MONTIEL LOPEZ, *individually and*
*on behalf of others similarly situated,*

> *Plaintiff,*

-against-

PLOY DEE INC. (d/b/a WONDEE SIAM V) and
WORRAWALLUN CORMACK,

> *Defendants.*
--------------------------------------------------------X

RECEIVED
JAN 29 2015
U.S.D.C. S.D. N.Y.
CASHIERS

**COMPLAINT**

**COLLECTIVE ACTION**
**UNDER 29 U.S.C. § 216(b)**

**ECF Case**

Plaintiff Manuel Montiel Lopez ("Plaintiff Montiel" or "Mr. Montiel"), individually and

on behalf of others similarly situated, by and through his attorneys, Michael Faillace &

Associates, P.C., alleges upon information and belief, and as against each of Defendants Ploy

Dee Inc. (d/b/a Wondee Siam V ) ("Defendant Corporation") and Worrawallun Cormack

(collectively, "Defendants"), as follows:

### NATURE OF ACTION

1.      Plaintiff Montiel is a former employee of Defendants Ploy Dee Inc. (d/b/a

Wondee Siam V) and Worrawallun Cormack.

2.      Wondee Siam V is a Thai restaurant owned by Worrawallun Cormack located at

969 Amsterdam Avenue, New York, New York 10025.

3.      Upon information and belief, Defendant Worrawallun Cormack serves or served as owner, manager, principal and/or agent of Defendant Corporation, and through this corporate entity operates the Thai restaurant.

4.      Plaintiff Montiel is a former employee of Defendants.

5.      Plaintiff Montiel was ostensibly employed as a delivery worker, but he was required to spend several hours each day performing non-tipped duties unrelated to deliveries, including but not limited to cutting meats, preparing spring rolls and other Thai dumplings, dishwashing, cleaning bathrooms, windows, basement and the kitchen, twisting and tying cardboard boxes, taking out the garbage, bringing up items from the basement for the kitchen, carrying down deliveries and stocking them around the basement and peeling and cleaning the shrimp and storing them in a freezer inside a bag (hereinafter, "non-delivery, non-tip duties").

6.      Plaintiff Montiel regularly worked for Defendants in excess of 40 hours per week without appropriate minimum wage or overtime compensation for any of the hours that he worked.

7.      Rather, Defendants failed to maintain accurate recordkeeping of his hours worked and failed to pay Plaintiff Montiel appropriately for any hours worked over 40, either at the straight rate of pay or for any additional overtime premium.

8.      Further, Defendants failed to pay Plaintiff Montiel the required "spread of hours" pay for any day in which he had to work over 10 hours a day.

9.      Defendants employed and accounted for Plaintiff Montiel as a delivery worker in their payroll, but in actuality his duties included greater or equal time spent performing the non-delivery, non-tipped duties alleged above.

2

10.     At all times, regardless of duties, Defendants paid Plaintiff Montiel and all other delivery workers at the lowered tip-credited rate.

11.     However, under both the FLSA and NYLL, Defendants were not entitled to take a tip credit because Plaintiff Montiel's non-tipped duties exceeded 20% of each workday, or 2 hours per day (whichever was less in each day) (12 N.Y.C.R.R. § 146).

12.     Upon information and belief, Defendants employed the policy and practice of disguising Plaintiff Montiel's actual duties in payroll records to avoid paying Plaintiff Montiel at the minimum wage rate, and to enable them to pay Plaintiff Montiel at the lower tip-credited rate by designating him as a delivery worker instead of a non-tipped employee.

13.     Defendants' conduct extended beyond Plaintiff Montiel to all other similarly situated employees.

14.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiff Montiel  and other employees to work in excess of forty (40) hours per week without providing them the overtime compensation required by federal and state law and regulations.

15.     Plaintiff Montiel  now brings this action on behalf of himself, and other similarly situated individuals, for unpaid overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), the New York Labor Law ("NYLL") §§190 and 650 *et seq.*, and "overtime wage order" respectively codified at N.Y.C.R.R. Tit. 12 §§ 142-2.2, 2.4), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.4(a) (2009) (herein the "Spread of

3

Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees, and costs.

16.     Plaintiff Montiel seeks certification of this action as a collective action on behalf of himself, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 216(b) (FLSA), 28 U.S.C. § 1531 (interstate commerce) and 28 U.S.C. § 1331 (federal question).  Supplemental jurisdiction over Plaintiff Montiel's state law claims is conferred by 28 U.S.C. § 1367(a).

18.     Venue is proper in this district under 28 U.S.C. § 391(b) and (c) because all or a substantial part of the events or omissions giving rise to the claims occurred in this district, Defendants operate their businesses in this district, and Plaintiff Montiel was employed by Defendants in this district.

## PARTIES

### *Plaintiff*

19.     Plaintiff Montiel is an adult individual residing in New York County, New York.

20.     Plaintiff Montiel was employed by Defendants from approximately March 2009 until May 13, 2013.

21.     Pursuant to 29 U.S.C. § 216(b), Plaintiff Montiel consents to being a party and brings these claims based upon the allegations herein as a representative party of a prospective class of similarly situated individuals under 29 U.S.C. § 216(b).

4

*Defendants*

22.     At all times relevant to this Complaint, Defendants owned, operated, and/or controlled a Thai restaurant located at 969 Amsterdam Avenue, New York, New York 10025 under the name "Wondee Siam V".

23.     Upon information and belief, Ploy Dee Inc. ("Defendant Corporation") is a corporation organized and existing under the laws of the State of New York.  Upon information and belief, it maintains its principal place of business at 969 Amsterdam Avenue, New York, New York 10025.

24.     Defendant Worrawallun Cormack is an individual engaging (or who was engaged) in business within this judicial district during the relevant time period.  Defendant Cormack is sued individually and in his capacity as an owner, officer and/or agent of Defendant Corporation.

25.     Defendant Cormack possesses or possessed operational control over Defendant Corporation, an ownership interest in Defendant Corporation and/or controlled significant functions of Defendant Corporation.

26.     Defendant Cormack determined the wages and compensation of the employees of Defendants, including Plaintiff Montiel, established the schedules of the employees, maintained employee records and had the authority to hire and fire employees.

5

## FACTUAL ALLEGATIONS

### *Defendants Constitute Joint Employers*

27.     Defendants operate a Thai restaurant located at 969 Amsterdam Avenue, New York, New York 10025.

28.     Individual Defendant Cormack possesses operational control over Defendant Corporation, possesses an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation.

29.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method and share control over the employees.

30.     Each Defendant possessed substantial control over Plaintiff Montiel's (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiff Montiel, and all similarly situated individuals, referred to herein.

31.     Defendants jointly employed Plaintiff Montiel, and all similarly situated individuals, and are Plaintiff Montiel's (and all similarly situated individuals') employers within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

32.     In the alternative, Defendants constitute a single employer of Plaintiff Montiel and/or similarly situated individuals.

33.     Upon information and belief, individual defendant Cormack operates Defendant Corporation as either an alter ego of himself and/or fails to operate Defendant Corporation as a legal entity separate and apart from himself by, among other things:

6

(a)     failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a separate and legally distinct entity;

(b)     defectively forming or maintaining Defendant Corporation by, among other things, failing to hold annual meetings or maintaining appropriate corporate records;

(c)     transferring assets and debts freely as between all Defendants;

(d)     operating Defendant Corporation for his own benefit as the sole or majority shareholder;

(e)     operating Defendant Corporation for his own benefit and maintaining control over it as a closed corporation or closely controlled entity;

(f)     intermingling assets and debts of his own with Defendant Corporation;

(g)     diminishing and/or transferring assets of Defendant Corporation to protect his own interests; and

(h)     other actions evincing a failure to adhere to the corporate form.

34.     At all relevant times, Defendants were Plaintiff Montiel's employers within the meaning of the FLSA and NYLL.

35.     Defendants had the power to hire and fire Plaintiff Montiel, controlled the terms and conditions of his employment, and determined the rate and method of any compensation in exchange for Plaintiff Montiel's services.

36.     In each year from 2009 to the present, Defendants, both individually and jointly, had gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

7

37.     In addition, upon information and belief, Defendants and/or their enterprises were directly engaged in interstate commerce. For example, numerous items that were sold in the Thai restaurant on a daily basis, such as shrimp and Thai vegetables, were produced outside of the State of New York.

### Individual Plaintiff

38.     Plaintiff Montiel is a former employee of Defendants ostensibly employed as a delivery worker, but who spent more than five hours a day performing the non-delivery, non-tip duties outlined above.

39.     Plaintiff Montiel seeks to represent a class of similarly situated individuals under 29 U.S.C. § 216(b).

### Plaintiff Manuel Montiel Lopez

40.     Plaintiff Montiel was employed by Defendants from approximately March 2009 until on or about May 13, 2013.

41.     At all relevant times, Plaintiff Montiel was ostensibly employed by Defendants as a delivery worker. However, Plaintiff Montiel spent at least five to six hours of each work day performing the non-delivery, non-tip duties outlined above.

42.     Plaintiff Montiel regularly handled goods in interstate commerce, such as steak and plantains produced outside of the State of New York.

43.      Plaintiff Montiel's work duties required neither discretion nor independent judgment.

44.     Throughout his employment with Defendants, Plaintiff Montiel regularly worked in excess of 40 hours per week.

8

45.     From approximately March 2009 until on or about May 13, 2013, Plaintiff Montiel worked from approximately 10:00 a.m. until on or about 12:00 a.m. Tuesdays through Sundays (typically 84 hours per week).

46.     Throughout his employment with Defendants, Plaintiff Montiel was paid his wages in a combination of check and cash.

47.     From March 2009 until on or about May 2013, Plaintiff Montiel was paid a fixed salary of $469 per week ($295 by check and $174 in cash).

48.     Plaintiff Montiel's wages did not vary regardless of how many additional hours he worked in a week.

49.     For example, Defendant required Plaintiff Montiel to work one hour past his scheduled departure time regularly, without paying him any additional compensation.

50.     Defendants did not grant Plaintiff Montiel any break or meal periods of any length.

51.     Plaintiff Montiel was never notified by Defendants that his tips would be included as an offset for wages.

52.     Defendants did not account for these tips in any daily, weekly or other accounting of Plaintiff Montiel's wages.

53.     Defendants did not provide Plaintiff Montiel with an accurate statement of wages with each payment of wages, as required by NYLL 195(3).

54.     With the exception of a two week period in 2013, Plaintiff Montiel was not required to keep track of his time, nor to his knowledge did the Defendants utilize any time

9

tracking device, such as punch cards or sign in sheets, that accurately reflected his actual hours worked.

55.     Defendants never provided Plaintiff Montiel with a written notice, in English and in Spanish (Plaintiff Montiel's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

56.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Montiel regarding overtime and wages under the FLSA and NYLL.

57.     Defendants required Plaintiff Montiel to purchase "tools of the trade" with his own funds—including a bicycle for $160.  Thus, the total cost of the "tools of the trade" Plaintiff Montiel was required to purchase was approximately $160.00.

*Defendants' General Employment Practices*

58.     Defendants regularly required their employees, including Plaintiff Montiel, to work in excess of forty (40) hours per week without paying them the proper minimum wage, overtime, or Spread of Hours compensation.

59.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiff Montiel (and all similarly situated employees) to work in excess of forty (40) hours per week without paying him appropriate minimum wage and/or overtime compensation, as required by federal and state laws.

60.     At no time did Defendants inform their employees, including Plaintiff Montiel, that they had reduced their hourly wages by a tip allowance.

61.     Defendants habitually required their employees, including Plaintiff Montiel, to work additional hours beyond their regular shifts, but did not provide them with any additional compensation.

62.     Defendants required all delivery workers, including Plaintiff Montiel, to perform general non-delivery, non-tipped restaurant tasks in addition to their primary duties as delivery workers. Plaintiff Montiel, and all similarly situated employees, were ostensibly employed as tipped employees by Defendants, although their actual duties included greater or equal time spent performing non-delivery, non-tipped duties.

63.     Plaintiff Montiel and all other delivery workers were paid at the lowered tip-credited rate by Defendants.  However, under state law, Defendants were not entitled to a tip credit because the delivery worker's and Plaintiff Montiel's non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever was less) (12 N.Y.C.R.R. § 146).

64.     New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he has been assigned to work in an occupation in which tips are not customarily received.  (12 N.Y.C.R.R. §§137-3.3 and 137-3.4).  Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

65.     The delivery worker's, including Plaintiff Montiel's, duties were not incidental to their occupation as delivery workers, but instead constituted entirely unrelated general restaurant work with duties, including the non-tipped duties described above.

66.     In violation of federal and state law as codified above, Defendants classified Plaintiff Montiel and other delivery workers as tipped employees and paid them at the tip-

credited rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

67.     Defendants' pay practices resulted in Defendants' delivery workers, including Plaintiff Montiel, not receiving payment for all their hours worked, resulting in their effective rate of pay falling below the required minimum and overtime wage rate.

68.     Plaintiff Montiel was paid his wages in a combination of check and cash.

69.     Defendants willfully disregarded and purposefully evaded record keeping requirements of the Fair Labor Standards Act and New York Labor Law by failing to maintain accurate and complete timesheets and payroll records.

70.     Upon information and belief, these practices were done to disguise the actual number of hours Plaintiff Montiel, and similarly situated employees, worked and to avoid paying them properly for their (1) full hours worked, (2) minimum wage, (3) overtime wages, and (4) spread of hours pay.

71.     Defendants failed to post required wage and hour posters in the restaurant, and did not provide their employees, including Plaintiff Montiel, with statutorily required wage and hour records or statements of their pay received, in part so as to hide Defendants' violations of the wage and hour laws, and to take advantage of their employees', including Plaintiff Montiel's, relative lack of sophistication in wage and hour laws.

72.     Defendants failed to provide Plaintiff Montiel  and other employees with wage statements at the time of each payment of wages containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week,

salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part

of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or

rates of pay; the number of regular hours worked; and the number of overtime hours worked, as

required by NYLL §195(3).

73.     Defendants failed to provide Plaintiff Montiel and other employees, at the time of

hiring and on or before February 1 of each subsequent year, a statement in English and the

employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid

by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as

part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day

designated by the employer; the name of the employer; any "doing business as" names used by

the employer; the physical address of the employer's main office or principal place of business,

and a mailing address if different; and the telephone number of the employer, as required by

New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

74.     Plaintiff Montiel brings his FLSA overtime wages, and liquidated damages claims

as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all

similarly situated persons who are or were employed by Defendants, or any of them, on or after

the date that is three years before the filing of the complaint in his case (the "FLSA Class

Period"), as employees of Defendants (the "FLSA Class").

75.     At all relevant times, Plaintiff Montiel, and other members of the FLSA Class

who are and/or have been similarly situated, had substantially similar job requirements and pay

provisions, and have been subject to Defendants' common practices, policies, programs,

13

procedures, protocols and plans of willfully failing and refusing to pay them the required

overtime pay of one and one-half times his regular rates for work in excess of forty (40) hours

per workweek under the FLSA, willfully taking improper wage deductions and other improper

credits against the FLSA Class' wages for which Defendants did not qualify under the FLSA,

and willfully failing to keep records required by the FLSA.

76.    The claims of Plaintiff Montiel stated herein are similar to those of the other

employees.

## FIRST CAUSE OF ACTION
## VIOLATION OF THE FLSA MINIMUM WAGE PROVISIONS

77.    Plaintiff Montiel repeats and realleges all paragraphs above as though fully set

forth herein.

78.    At all times relevant to this action, Defendants were Plaintiff Montiel's employers

(and employers of the putative FLSA Class members) within the meaning of the Fair Labor

Standards Act. 29 U.S.C. § 203(d). Defendants had the power to hire and fire Plaintiff Montiel

(and the FLSA class members), controlled the terms and conditions of employment, and

determined the rate and method of any compensation in exchange for their employment.

79.    At all times relevant to this action, Defendants were engaged in commerce or in

an industry or activity affecting commerce.

80.    Defendants constitute an enterprise within the meaning of the Fair Labor

Standards Act. 29 U.S.C. § 203 (r-s).

81.    Defendants failed to pay Plaintiff Montiel (and the FLSA Class members) at the

applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

14

82.     Defendants' failure to pay Plaintiff Montiel (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

83.     Plaintiff Montiel (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
## VIOLATION OF THE FLSA OVERTIME PROVISIONS

84.     Plaintiff Montiel repeats and realleges all paragraphs above as though fully set forth herein.

85.     At all times relevant to this action, Defendants were Plaintiff Montiel's employers (and employers of the putative FLSA Class members) within the meaning of the Fair Labor Standards Act. 29 U.S.C. § 203(d). Defendants had the power to hire and fire Plaintiff Montiel (and the FLSA class members), controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for his employment.

86.     At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

87.     Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act. 29 U.S.C. § 203 (r-s).

88.     Defendants, in violation of 29 U.S.C. § 207 (a)(1) of the FLSA, failed to pay Plaintiff Montiel  (and the FLSA Class members) overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek.

15

89.     Defendants' failure to pay Plaintiff Montiel (and the FLSA Class members) overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

90.     Plaintiff Montiel (and the FLSA Class members) were damaged in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**
**VIOLATION OF THE OVERTIME PROVISIONS OF THE**
**NEW YORK STATE LABOR LAW**

91.     Plaintiff Montiel repeats and realleges all paragraphs above as though fully set forth herein.

92.     Defendants, in violation of N.Y. Lab. Law § 190 *et seq*. and supporting regulations of the New York State Department of Labor, failed to pay Plaintiff Montiel overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek.

93.     Defendants' failure to pay Plaintiff Montiel overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

94.     Plaintiff Montiel was damaged in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF THE NEW YORK MINIMUM WAGE RATE**

95.     Plaintiff Montiel repeats and realleges all paragraphs above as though fully set forth herein.

96.     At all times relevant to this action, Defendants were Plaintiff Montiel's employers within the meaning of the N.Y. Lab. Law §§ 2 and 651. Defendants had the power to hire and fire Plaintiff Montiel (and the FLSA Class members), controlled terms and conditions of

16

employment, and determined the rates and methods of any compensation in exchange for employment.

97.     Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiff Montiel  (and the FLSA Class members) less than the minimum wage.

98.     Defendants' failure to pay Plaintiff Montiel (and the FLSA Class members) minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

99.     Plaintiff Montiel (and the FLSA Class Members) were damaged in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF THE SPREAD OF HOURS WAGE ORDER**
**OF THE NEW YORK COMISSIONER OF LABOR**

100.     Plaintiff Montiel repeats and realleges all paragraphs above as though fully set forth herein.

101.     Defendants failed to pay Plaintiff Montiel one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiff Montiel's spread of hours exceeded ten hours in violation of NYLL §§ 190 *et seq.* and 650 *et seq.* and the wage order of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. Tit. 12, § 142-2.4(a) (2009).

102.     Defendants' failure to pay Plaintiff Montiel an additional hour's pay for each day Plaintiff Montiel's spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

17

103.   Plaintiff Montiel was damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
## VIOLATION OF THE NOTICE AND RECORDKEEPING
## REQUIREMENTS OF THE NEW YORK LABOR LAW

104.   Plaintiff Montiel repeats and realleges all paragraphs above as though fully set forth herein.

105.   Defendants failed to provide Plaintiff Montiel  with a written notice, in English and in Spanish (Plaintiff Montiel 's primary language), of his rate of pay, regular pay day, and such other information as required by NYLL §195(1).

106.   Defendants are liable to Plaintiff Montiel in the amount of $2,500, together with costs and attorney's fees.

## SEVENTH CAUSE OF ACTION
## VIOLATION OF THE WAGE STATEMENT PROVISIONS
## OF THE NEW YORK LABOR LAW

107.   Plaintiff Montiel repeats and realleges all paragraphs above as though set forth fully herein.

108.   Defendants did not provide Plaintiff Montiel with a statement of wages with each payment of wages, as required by NYLL 195(3).

109.   Defendants are liable to Plaintiff Montiel in the amount of $2,500, together with costs and attorney's fees.

## EIGHT CAUSE OF ACTION
## (RECOVERY OF EQUIPMENT COSTS)

110.   Plaintiff repeat and reallege all paragraphs above as though set forth fully herein.

111.   Defendants have required Plaintiff to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform

18

his job, such as a bicycle, further reducing his wages in violation of the FLSA and NYLL. 29 U.S.C. § 206(a); 29 C.F.R § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

112.    Plaintiff has been damaged in an amount of approximately $160.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Montiel respectfully request that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members, apprising them of the pendency of this action, and permitting them promptly to file consents to be plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants have violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiff Montiel  and the FLSA class members;

(c)    Declaring that Defendants have violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiff Montiel  and the FLSA class members;

(d)    Declaring that Defendants have violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiff Montiel's, and the FLSA class members', compensation, hours, wages, and any deductions or credits taken against wages;

(e)    Declaring that Defendants' violation of the provisions of the FLSA were willful as to Plaintiff Montiel  and the FLSA class members;

19

(f)     Awarding Plaintiff Montiel and the FLSA class members damages for the amount of unpaid overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA, as applicable;

(g)     Awarding Plaintiff Montiel and the FLSA class members liquidated damages in an amount equal to 100% of his damages for the amount of unpaid overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Declaring that Defendants have violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiff Montiel and the members of the FLSA Class;

(i)     Declaring that Defendants have violated the Spread of Hours Wage Order of the New York Commission of Labor as to Plaintiff Montiel and the members of the FLSA Class;

(j)     Declaring that Defendants have violated the recordkeeping requirements of the NYLL with respect to Plaintiff Montiel's, and the FLSA Class members', compensation, hours, wages; and any deductions or credits taken against wages;

(k)     Declaring that Defendants' violations of the New York Labor Law were willful as to Plaintiff Montiel and the FLSA Class members;

(l)     Awarding Plaintiff Montiel and the FLSA class members damages for the amount of unpaid overtime wages as well as damages for any improper deductions or credits taken against wages;

(m)     Awarding Plaintiff Montiel damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

20

(n)      Awarding Plaintiff Montiel and the FLSA class members liquidated damages in

an amount equal to one hundred percent (100%) of the overtime compensation shown to be owed

pursuant to NYLL § 663 as applicable;

(o)      Declaring that Defendants' violations of NYLL § 191was willful as to Plaintiff

Montiel  and the FLSA class members;

(p)      Awarding Plaintiff Montiel  and the FLSA class members damages for

Defendants' failure to pay Plaintiff in a timely fashion, as required by NYLL § 191;

(q)      Awarding Plaintiff Montiel  and the FLSA class members pre-judgment and post-

judgment interest as applicable;

(r)      Awarding Plaintiff Montiel and the FLSA class members the expenses incurred

in this action, including costs and attorney's fees;

(s)      Providing that if any amounts remain unpaid upon the expiration of ninety days

following issuance of judgment, or ninety days after expiration of the time to appeal and no

appeal is then pending, whichever is later, the total amount of judgment shall automatically

increase by fifteen percent, as required by NYLL § 198(4); and

(t)      All such other and further relief as the Court deems just and proper.

Dated: New York, New York
        January 29, 2014

                                        MICHAEL FAILLACE & ASSOCIATES, P.C.


                                        By:      Michael A. Faillace [MF-8436]
                                                 60 East 42nd Street, Suite 2020
                                                 New York, New York 10165
                                                 (212) 317-1200

21

*Attorneys for Plaintiff*

22